**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 10-cv-00813-WJM-KMT

GUY PAQUET and
ELIZABETH PAQUET,

      Plaintiffs,

v.

MARK SMITH,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' PARTIAL**
**MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Guy Paquet and Elizabeth Paquet (the "Paquets") bring this action

against Defendant Mark Smith alleging that Defendant stole Plaintiffs' water rights on

real property in violation of a settlement agreement between the parties.  Defendant

has brought counterclaims against the Plaintiffs, alleging that Plaintiffs have interfered

with Defendant's peaceful enjoyment of his real property in violation of the same

agreement.  Before the Court are Plaintiffs' Partial Motion for Partial Summary

Judgment ("Plaintiffs' Motion") (ECF No. 64) and Defendant's Motion for Summary

Judgment ("Defendant's Motion").  (ECF No. 134.)  Also before the Court is Defendant's

Request for Oral Argument.  (ECF No. 139.)

For the reasons set forth below, Defendant's Motion for Summary Judgment is

GRANTED, Plaintiffs' Motion for Partial Summary Judgment is GRANTED in part and

DENIED in part, and Defendant's Request for Oral Argument is DENIED as MOOT.

## I.  BACKGROUND

### A.      Factual Background

The following facts are taken from the record:[1]

In 1996, the Paquets purchased approximately 140 acres of real property in Dolores County, Colorado.  (G. Paquet Dep. at 19:25-20:11.)  The Paquets subdivided the property into nine lots to create the West Fork Village Subdivision (the "Subdivision") and then sold Lots 1, 2, 3, 4, 6, 7, and 8.  (*Id*. at 20:6-16, 23:7-26:1 27:9-13; E. Paquet Dep. at 50:19-54:7.)  The Paquets retained Lots 5a, 5b, and 9.  (E. Paquet Dep. at 30:20-24.)

When the Paquets purchased the property they received ownership of 4.0 cubic feet per second ("cfs") of water from the Dolores River pursuant to an 1883 Water Decree and subsequent adjudication.  (G. Paquet Dep. at 27:14-28:18, 31:9-32:5, 33:14-18, 337:18-339:12; E. Paquet Dep. at 71:11-14.)  The Paquets provided each lot purchaser the right to use 1/135th per acre of the 4.0 cfs, but the Paquets retained ownership of the water itself.  (G. Paquet Dep. at 27:14-28:18, 31:9-32:5, 33:14-18.)  This water is diverted from the Dolores River into the Koenig Irrigation Ditch ("Koenig Ditch") to irrigate Lots 1 through 8.  (Historic Use and Consumptive Use of Koenig Ditch (SMITH 000016-17.))  Water enters the Koenig Ditch through the Subdivision's Main Gate, which is opened and closed to regulate the flow of water into the Koenig Ditch.

---

[1]      While the parties have cross-moved for summary judgment, because the Court is ruling in favor of Defendant, it resolves all factual ambiguities against Defendant.

(Subdivision Map, Def. Motion, Exhibit D; Craig Cox Decl. ¶ 11.)

In 2000, Defendant purchased Lot 2 and a one-quarter interest in Lot 1.  (Mark Smith Decl. ¶ 1.)  On May 23, 2008, Defendant conveyed Lots 1 and 2 to San Juan Ranch, LLC ("San Juan Ranch"), an Arizona limited liability corporation.  (Quitclaim Deed, Def. Motion, Exhibit F; G. Paquet Dep. at 72:4-73:23; San Juan Ranch Certificate of Good Standing, Def. Motion, Exhibit G.)  Defendant is the manager of San Juan Ranch.  (Settlement Agreement, Def. Motion, Exhibit K; G. Paquet Dep. at 68:17-69:1; E. Paquet Dep. at 37:11-38:11.)

The Paquets, as part of forming the Subdivision, also created the West Fork Village Home Owners Association ("HOA").  (G. Paquet Dep. at 24:20-26:1; E. Paquet Dep. at 50:19-54:7.)  Each lot owner is a member of the HOA and pays HOA dues. (Montie Lee Decl. ¶ 6.)  The HOA retains a "Water Master" who measures the water going into the Koenig Ditch to ensure that any party drawing water from the ditch receives their *pro rata* share.  (Standards and Procedures, Def. Motion, Exhibit M; Montie Lee Decl.  ¶¶ 8-11; Craig Cox Decl. ¶ 3; Howard Gwynn Decl. ¶¶ 4-6; Mark Smith Decl. ¶¶ 28-30.)  Craig Cox, who owns Lot 8, was appointed Water Master by the HOA in July 2008.  (Craig Cox Decl. ¶¶ 2-4; E. Paquet Dep. 73:20-80:21; Montie Lee Decl. ¶ 7; Howard Gwynn Decl. ¶ 3.)  As Water Master, Mr. Cox is responsible for "the day-to-day operation of the Koenig [D]itch," including delivering water, inspecting the Koenig Ditch, and scheduling maintenance.  (*See* Colo. Rev. Stat. §§ 37-84-118, 119; G. Paquet Dep. 96:12-97:5, 98:24-102:6; Standards and Operating Procedures, Def. Motion, Exhibit M; Craig Cox Decl. ¶¶ 6, 8; Montie Lee Decl. ¶¶ 9-11.)  Mr. Cox has

discretion to shut down the water flow to the Koenig Ditch to complete necessary repairs.  (Colo. Rev. Stat. § 37-84-119; G. Paquet Dep. 115:19-116:1; Craig Cox Decl. ¶¶ 8, 9; Montie Lee Decl. ¶¶ 9-12.)

In 2008, a dispute between the lot owners and the Paquets occurred regarding the implementation, enforcement, and application of the Subdivision's and the HOA's covenants and bylaws.  (Dolores County Complaint, Def. Motion, Exhibit J.)  The lot owners filed a lawsuit in the Dolores County District Court against the Paquets (the "Dolores Lawsuit"), and the Paquets filed counterclaims.  (*Id.*; Paquets' Dolores Counterclaims, Def. Motion, Exhibit Q.)

On February 26, 2009, the lot owners and the Paquets settled the Dolores Lawsuit (the "Settlement Agreement").  (Settlement Agreement, Def. Motion, Exhibit K.) The Settlement Agreement, among other things, required the Paquets to convey to the lot owners by bargain and sale deed 1/135th of the 4.0 cfs water right for each acre of land owned.  (*Id.*)

On or about June 26, 2009, after the partes entered into the Settlement Agreement, water to the Koenig Ditch was shut down for approximately three to four hours in order to repair a pipe obstruction that prevented water from going to Lot 1, 2, 3, and 4.  (G. Paquet Dep. 87:2-88:25; E. Paquet Dep. 45:15-46:7, 49:11-50:7, 93:22-94:14, 96:9-97:25, 103:24-25, 144:20-148:14, 165:9- 21, 172:19-23, 230:3-12.) Mr. Cox shut off the water on June 26, 2009 because his previous attempts to clear the obstruction without shutting off the water failed.  (Craig Cox Decl. ¶¶ 29, 32.) Defendant was present with Mr. Cox when the water was shut off.  (E. Paquet Dep.

280:19-25.)  Mr. Cox selected June 26, 2009 for repairs because Defendant traveled to

the Subdivision from Arizona, and was available to assist him in clearing the

obstruction.  (Craig Cox Decl. ¶ 32.)

In late August/early September 2009, Mr. Cox restricted the Koenig Ditch's

hours of operation and closed the Main Gate at night to prevent beavers from

accessing the Koenig Ditch and obstructing the flow of water with beaver dams.  (G.

Paquet Dep. 87:2-88:25, 117:1-12, 118:14-18, 119:2-120:19; E. Paquet Dep.

93:22-96:8, 106:12-107:12-25, 125:4-127:16; Craig Cox Decl. ¶¶ 43-52.)  Mr. Cox

provided water reports to the Paquets on the late August/early September 2009 water

restrictions.  (G. Paquet Dep. 48:18-51:22, 117:15-23; E. Paquet Dep. 106:12-107:12,

128:20-131:7.)  These water reports included the annotation: "c/o Mark Smith."  (*Id.*)

B.    **Procedural History**

Plaintiffs, through counsel, filed their Amended Complaint on October 29, 2010.[2]

(ECF No. 27.)  Plaintiffs bring claims against Defendant for: (1) breach of contract (First

Claim), (2) breach of implied covenant of good faith & fair dealing (Second Claim), (3)

repudiation of contract (Third Claim), (4) conversion (Fourth Claim), and (5) civil theft

(Fifth Claim).  (*Id.*)

Plaintiffs claim that Defendant violated the Settlement Agreement's covenant

not to interfere with their receipt of the allocated water, and converted and/or stole their

lawful water allotment.  (*Id.* at 3-7.)  Specifically, Plaintiffs claim that Defendant

___

[2]      On September 26, 2011, after the filing of all relevant Motions, Plaintiffs' attorney
James Preston, was removed as counsel of record for Plaintiffs in this case.  (ECF No. 147.)
As of the filing of this Order, Plaintiffs proceed *pro se.*

converted and/or stole Plaintiffs' water though two separate incidents: (1) a June 26, 2009 water shut down; and (2) a late August/early September 2009 water restriction. (G. Paquet Dep. 87:2-88:25; E. Paquet Dep. 45:15-46:7, 49:11-50:7, 93:22-94:14, 96:9-97:25, 103:24-25, 144:20-148:14, 165:9- 21, 172:19-23, 230:3-12.)

On February 9, 2011, Defendant filed his Amended Counterclaims.  (ECF No. 39.)  Defendant brings counterclaims against Plaintiffs for: (1) breach of contract (First Counterclaim), (2) breach of implied covenant of good faith & fair dealing (Second Counterclaim), (3) abuse of process (Third Counterclaim), (4) civil conspiracy (Fourth Counterclaim), and (5) breach of fiduciary duty (Fifth Counterclaim).  (*Id*.)  Defendant's counterclaims allege that Plaintiffs violated the Settlement Agreement through their actions and tactics, rendering Defendant unable to use and enjoy his Subdivision property and unable to have peace.  (*Id*.)

The parties proceeded to disclosure and discovery.  On April 20, 2011, Plaintiffs filed a Motion for Partial Summary Judgment pursuant to Federal Rules of Civil Procedure 12(c) and 56(b) and 56(c).  (ECF No. 64.)  Plaintiffs' Motion seeks summary judgment on Defendant's counterclaims "that pre-date the Settlement Agreement."  (*Id*. at 6-7.)  On May 11, 2011, Defendant filed a Response to Plaintiffs' Motion for Partial Summary Judgment.  (ECF No. 93.)

On September 8, 2011, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on all of Plaintiffs' claims.  (ECF No. 134.)  On September 5, 2011, Plaintiffs filed an Amended Response (ECF No. 137) to Defendant's Motion for Summary Judgment, and on September 8, 2011, Defendant

-6-

filed a Reply (ECF No. 138) in Support of his Motion for Summary Judgment.  Also on

September 8, 2011, Defendant filed a Request for Oral Argument.  (ECF No. 139.)

These Motions are now ripe for resolution.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242,

248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v.*

*U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The

Court must resolve factual ambiguities against the moving party, thus favoring the right

to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527

(10th Cir. 1995); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The moving party bears the initial burden of showing an absence of evidence to

support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Where the non-movant

bears the burden of proof at trial, the non-movant must then point to specific evidence

establishing a genuine issue of material fact with regard to each challenged element.
*See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002); *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).

## III.  ANALYSIS

### A.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on all of Plaintiffs' claims, primarily arguing that: (1) Defendant is not a party to the Settlement Agreement that is the basis of the Paquets' claims; and (2) the Paquets' complaints are directed towards the wrong person.  (Def. Motion at 1.)  Plaintiffs oppose Defendant's Motion arguing that Defendant is a party to the Settlement Agreement (Pls'. Response at 32-37) and is responsible for unlawfully converting and/or stealing Plaintiffs' water.  (*Id.* at 32-41.)

### 1.  Breach of Contract (First Claim), Breach of Implied Covenant of Good Faith and Fair Dealing (Second Claim), and Repudiation of Contract (Third Claim)

Plaintiffs' first three claims - breach of contract (First Claim), breach of implied covenant of good faith and fair dealing (Second Claim), and repudiation of contract (Third Claim) - are all contract claims brought under Colorado law.  As such, a neccessary predicate to these claims is the presence of a contract binding on both parties.  *See Winter Park Real Estate & Invs., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo. App. 2007) ("A person who is not a party to a contract cannot be compelled to perform its terms . . . .").

Defendant argues that he is not a party to the contract in question - the Settlement Agreement - because he only signed the Agreement on behalf of San Juan

Ranch, the actual owner of Lots 1 and 2.  (Def. Motion at 18-19.)  Plaintiffs, conversely,

assert that Defendant is a party to the Settlement Agreement, and that San Juan Ranch

is a fictitious entity.  (Pls'. Resp. at 32-36.)

To prevail on their breach of contract claim under Colorado law, Plaintiffs must

sufficiently satisfy the following elements: (1) the existence of a contract; (2)

performance by the plaintiff or some justification for nonperformance; (3) failure to

perform the contract by a party to the contract; and (4) resulting damages to the

plaintiff.  *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The good faith and fair dealing doctrine, on the other hand, is generally used to

effectuate the intentions of the parties to the contract or to honor their reasonable

expectations. *See State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo.

1993).   Good faith performance of a contract involves "faithfulness to an agreed

common purpose and consistency with the justified expectations of the other party."

*Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo.

App. 1994) (citing Restatement (Second) of Contracts § 205 cmt. a (1981)).

Finally, to prevail on their claim for repudiation of a contract, Plaintiffs must

present evidence that a party to the contract positively and unequivocally "refus[e] to

perform the contract, not a mere[ly] threat[en] to abandon its obligations under the

contract."  *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008) (citing *Lake Durango

Water Co. v. Pub. Utils. Comm'n*, 67 P.3d 12, 21 (Colo. 2003)).  A "[m]ere expression of

doubt as to [a party's] willingness or ability to perform is not enough to constitute a

repudiation."  *Id*. (internal citations omitted).  A repudiation "must be apparent in the

objective sense." *Id.*

Accordingly, for Plaintiffs to prevail on their contract claims, Defendant must be a party to the Settlement Agreement. *See Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000); *see also Chandler-McPhail v. Duffey*, 194 P.3d 434, 438 (Colo. App. 2008) ("a nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty"); *E. Meadows Co, v. Greeley Irrigation Co.*, 66 P.3d 214, 217 (Colo. App. 2003). Moreover, an individual is not bound by a contract when he or she signs it on behalf of an entity. *See Winter Park*, 160 P.3d at 406 ("[S]igning document in official capacity evidences intent that it apply to individual only in official capacity") (citing *Colo. Fin. Co. v. B.F. Bennet Oil Co.*, 129 P.2d 299, 301 (Colo. 1942)).

Here, Defendant did not own real property in the Subdivision at the time the Dolores Lawsuit was filed or at the time the Settlement Agreement was effectuated. (Quitclaim Deed, Def. Motion, Exhibit F; G. Paquet Dep. at 72:4-73:23; San Juan Ranch Certificate of Good Standing, Def. Motion, Exhibit G.) San Juan Ranch is the owner of the Subdivision's Lots 1 and 2. (*Id.*) The Settlement Agreement is signed, in plain language, by the Paquets and San Juan Ranch, with Defendant signing as the manager of San Juan Ranch. (Settlement Agreement, Def. Motion, Exhibit K.)

Defendant asserts that he signed the Settlement Agreement on behalf of San Juan Ranch. (Def. Motion at 18-19.) Plaintiffs have presented no competent evidence to controvert this assertion. The plain language of the Settlement Agreement supports Defendant's contention that he signed the agreement only in his representative capacity

as the manager of San Juan Ranch.  As such, Defendant is not a party to the

Settlement Agreement and cannot be subjected to contract claims in his individual

capacity.  *See Winter Park*, 160 P.3d at 406; Colo. Rev. Stat. § 7-80-705 (2010)

("Members and managers of limited liability companies are not liable under a judgment,

decree, or order of a court, or in any other manner, for a debt, obligation, or liability of

the limited liability company.")

Plaintiffs argue that Defendant is a party to the Settlement Agreement because,

they claim, San Juan Ranch LLC is a fictitious entity.  (Pls'. Resp. at 32-36.)  Plaintiffs'

argument is premised on the fact that San Juan Ranches, LLC [as opposed to the

singular form San Juan Ranch, LLC] appears on the Settlement Agreement and

Quitclaim Deed from Defendant, and because Defendant signed the Settlement

Agreement as manager of San Juan Ranches, LLC [as opposed to the singular form

San Juan Ranch, LLC].  (Settlement Agreement, Def. Motion, Exhibit K; Quitclaim

Deed, Def. Motion, Exhibit F.)

Defendant, however, has explained that the Settlement Agreement's and the

Quitclaim Deed's use of the plural form San Juan Ranch, LLC was simply a

typographical error.  (Def. Reply at 8-9.)  As before, Plaintiffs have no offered no

evidence to controvert this explanation.  Indeed, the Settlement Agreement lists Arizona

as the LLC's domiciled state, and the Smiths' Quitclaim Deed and the Dolores Lawsuit

both list the corporate address for San Juan Ranch, LLC.  (Settlement Agreement, Def.

Motion, Exhibit K; Quitclaim Deed, Def. Motion, Exhibit F.)  Moreover, Defendant has

introduced evidence showing that San Juan Ranch, LLC is a registered limited liability

company in Arizona. (San Juan Ranch Certificate of Good Standing, Def. Motion, Exhibit G.) Plaintiffs cannot meet their burden opposing summary judgment by relying on nothing more than a typographical error. *See Sunstone at Colo. Springs HOA Ass'n v. White*, 56 P.3d 127, 129 (Colo. App. 2002) ("It is the general rule that, where there is a misnomer of a corporation in a grant, obligation, written contract notice, or the like, if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the corporate body is well named, even though there is a variation of words and syllables . . . [a] misnomer of a corporation in a written document is not material if the identity of the intended corporation is clear or can be ascertained by proof.").

Accordingly, the Court finds that Defendant Mark Smith was not a party to the Settlement Agreement. Because Defendant Smith is not a party to the Settlement Agreement, he cannot be held liable for San Juan Ranch's alleged breach of the Settlement Agreement as a matter of law. *See Town of Alma*, 10 P.3d at 1262. As such, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim (First Claim), breach of implied covenant of good faith and fair dealing claim (Second Claim), and repudiation of contract claim (Third Claim).

## 2. Conversion (Fourth Claim) and Civil Theft (Fifth Claim)

Plaintiffs' fourth and fifth claims - conversion (Fourth Claim) and civil theft (Fifth Claim) - allege that Defendant converted and/or stole Plaintiffs' water when: (1) in June 2009, the Main Gate to the Koenig Ditch was closed for a period of time, restricting Plaintiffs' water allotment; and (2) in September 2009, the hours of water operation to

Plaintiffs' property were restricted.[3]  (G. Paquet Dep. 87:2-88:25; E. Paquet Dep. 45:15-46:7, 49:11-50:7, 93:22-94:14, 96:9-97:25, 103:24-25, 144:20-148:14, 165:9- 21, 172:19-23, 230:3-12.)  Defendant asserts, among other arguments, that there is no evidence that he converted and/or stole Plaintiffs' water, and that Plaintiffs claims are barred by the economic loss rule.  (Def. Motion at 19-24.)

Under Colorado common law, conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Internet Archive v. Shell*, 505 F. Supp. 2d 755, 762 (D. Colo. 2007) (citation omitted).  Civil theft, on the other hand, is defined by statute in Colorado criminal code section 18-4-405 (the "Rights in Stolen Property" Statute). *See Ziegler v. Inabata of America, Inc.,* 316 F. Supp. 2d 908, 915-16 (D. Colo. 2004) (citing *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000)).  Under this statute, a defendant is subject to civil liability if the defendant committed acts of theft, as defined by the Criminal Code. *Id*.  Thus, the statute provides a private civil remedy for a criminal act. *Id*.

Defendant first argues that the economic loss rule bars Plaintiffs' conversion and civil theft claims.  (Def. Motion at 19-20.)  The economic loss rule is "intended to maintain the boundary between contract law and tort law." *Town of Alma*, 10 P.3d at 1259.  "Contract obligations arise from promises the parties had made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from

---

[3]     To the extent that Plaintiffs' Amended Complaint alleges that Defendant converted and/or stole Plaintiffs' water through alleged leaks in the Koenig Ditch, Plaintiffs have now abandoned that claim.  (Pls. Am. Resp. at 38.) ("The Plaintiffs are not alleging that Smith has any duty to repair the Koenig Ditch.").

risk of physical harm or damage to their personal property." *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865-66 (Colo. 2005). "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." *Town of Alma*, 10 P.3d at 1262.

As explained above, the Court has found that Defendant Mark Smith was not a party to the Settlement Agreement and, therefore, Plaintiffs cannot bring claims under contact law. Because contract remedies are unavailable to Plaintiffs, the economic loss doctrine does not bar them from bringing conversion and civil theft claims under tort law. *See A.C. Excavating*, 114 P.3d at 865-66.

However, while the economic loss doctrine does not bar Plaintiffs' tort claims, Defendant is nonetheless entitled to summary judgment on Plaintiffs' conversion and civil theft claims. Plaintiffs' conversion and civil theft claims survive a Rule 56 motion only if Plaintiffs can point to specific evidence establishing that Defendant exercised control over the Plaintiffs' water, intended to convert and/or steal the water, actually received the water, and personally enjoyed the benefits of the water. *See Itin*, 17 P.3d at 134; *Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996) (citation omitted). Plaintiffs have failed to do so.

On June 26, 2009, Mr. Cox, who was charged with maintaining the Koenig Ditch, closed the Subdivision's Main Gate for three to four hours to permit Mr. Cox and Defendant to clear an obstruction to a pipe that fed water to Lots 1, 2, 3 and 4. (G. Paquet Dep. 87:2-88:25; E. Paquet Dep. 45:15-46:7, 49:11-50:7, 93:22-94:14, 96:9-97:25, 103:24-25, 144:20-148:14, 165:9- 21, 172:19-23, 230:3-12, 280:19-25.)

Mr. Cox closed the Main Gate when his prior attempts to clear the obstruction without closing it failed. (Craig Cox Decl. ¶¶ 29, 32.) Mr. Cox has declared that he decided to shut off the water exercising his judgment and discretion, provided to him by the HOA, to do what he believed was in the best interest in maintaining and repairing the Koenig Ditch. (Craig Cox Decl. ¶¶ 9, 25, 30, 32, 48, 52.)

Plaintiffs have introduced no evidence, competent or otherwise, that Defendant converted and/or stole Plaintiffs' water on June 26, 2009. They have offered no evidence controverting Mr. Cox's declaration. Indeed, the Water Master's presence on June 26, 2009 evidences that the maintenance work was done with the Water Master's knowledge and approval. The only evidence Plaintiffs rely on in support of their tort claims is Mrs. Paquet's testimony that when she confronted Mr. Cox and Defendant on June 26, 2009, the day of the initial pipe repair, she believed Defendant was in control of the repairs. (E. Paquet Dep. 280:19-25.) Mrs. Paquet's subjective belief, however, does not create a genuine issue of material fact as to whether Defendant actually had any degree of control over the water stoppage.

As for the late August/ early September 2009 water restrictions, Mr. Cox stated that he closed the Subdivision's Main Gate at night to prevent beavers from damaging the Koenig Ditch and impeding the flow of water. (G. Paquet Dep. 87:2-88:25, 117:1-12, 118:14-18, 119:2-120:19; E. Paquet Dep. 93:22-96:8, 106:12-107:12-25, 125:4-127:16; Craig Cox Decl. ¶¶ 43-52.) Mr. Cox stated that, at all times, he exercised his independent judgment in deciding how to best maintain the Koenig Ditch as the HOA's Water Master. (Craig Cox Decl. ¶¶ 9, 25, 30, 32, 48, 52.) Mr. Cox further

-15-

declared that he made his repair decisions exercising his independent judgment and

discretion provided to him by the HOA to maintain the Koenig Ditch's operation.  (*Id.*)

Plaintiffs have brought forward no evidence that Defendant converted and/or

stole Plaintiffs' water through the late August/ early September 2009 water restrictions.

There is no evidence that Defendant was even in Colorado when these water

restrictions occurred.  As such, there is no genuine material factual dispute as to

whether Defendant exercised control over Plaintiffs' water.

Plaintiffs also argue that Mr. Cox undertook the water restrictions "care of Mr.

Smith" because the initials "c/o Mark Smith" appear at the bottom of Mr. Cox's water

reports. (Pls'. Am. Response at 22.)  But Mr. Cox testified that he included the initials

"c/o" to simply show that he copied Defendant on the water reports.  (G. Paquet Dep.

48:18-51:22, 117:15-23; E. Paquet Dep. 106:12-107:12, 128:20-131:7).  Plaintiffs have

presented no evidence countering this testimony.[4]

As Plaintiffs have not put forth sufficient evidence to create a genuine issue of

material fact that Defendant took any action to convert and/or steal Plaintiffs' water,

Defendant is entitled to summary judgment on Plaintiffs' claims for conversion (Fourth

Claim) and civil theft (Fifth Claim).[5]

---

[4]     Plaintiffs also include statutory claims pursuant to C.R.S. § 37-84-112 to 120 (2009) and C.R.S. § 37-84-124 (2009) in their Amended Complaint.  (Am. Comp. ¶ 12.) Plaintiffs, however, do not dispute that these claims fail as a matter of law.  To the extent that Plaintiffs still assert these statutory claims, the Court finds that Defendant is entitled to summary judgment on these claims as well.

[5]     Defendant has also requested oral argument on his Motion for Summary Judgment.  (ECF No. 139.)  In light of the Court's decision to grant Defendant's Motion, Defendant's Request for Oral Argument is DENIED.

**B.     Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs have moved for partial summary judgment on Defendant's counterclaims "that pre-date the Settlement Agreement."  (Def. Motion at 5-6.)

Plaintiffs argue that "[t]he Court should enforce the plain language of the Agreement, its waivers and releases, and dismiss any counterclaims of the Defendant that pre-date the Settlement Agreement."  (*Id*. at 6.)  Defendant, conversely, asserts that Plaintiffs "do not satisfy their burden because they make only a conclusory statement that [Defendant's] counterclaims pre-date the Settlement Agreement, but do not indicate how the Settlement Agreement is binding on [Defendant] or to which, if any, of [Defendant's] counterclaims they refer."  (Def. Resp. at 6.)  Further, Defendant states that "[b]ecause [Defendant] is not a party to the Settlement Agreement, or individually bound by the Settlement Agreement, he did not release his claims against [Plaintiffs]." (*Id*. at 7.)

Defendant's counterclaims against Plaintiffs are for: (1) breach of contract (First Counterclaim), (2) breach of implied covenant of good faith & fair dealing (Second Counterclaim), (3) abuse of process (Third Counterclaim), (4) civil conspiracy (Fourth Counterclaim), and (5) breach of fiduciary duty (Fifth Counterclaim).  (Def. Motion.)

As discussed above, Defendant is not a party to the Settlement Agreement. Therefore, Defendant cannot bring counterclaims against Plaintiffs for breach of contract (First Counterclaim) and breach of implied covenant of good faith & fair dealing (Second Counterclaim) arising out of the Settlement Agreement.  *See Winter Park*, 160

-17-

P.3d at 406; Colo. Rev. Stat. § 7-80-705 (2010).

As to the remainder of Defendant's counterclaims - abuse of process (Third Counterclaim), civil conspiracy (Fourth Counterclaim), and breach of fiduciary duty (Fifth Counterclaim) it is difficult to ascertain from the papers if Plaintiffs' Motion for Partial Summary Judgment is seeking judgment as a matter of law as to these counterclaims. Regardless, Plaintiffs have presented no evidence in support of the relief they seek in this motion. As such, to the extent that Plaintiffs are seeking summary judgment on these counterclaims, Plaintiffs' Motion for Partial Summary Judgment fails. *See Celotex*, 477 U.S. at 325.

Accordingly, Plaintiffs are entitled to summary judgment on Defendant's counterclaims for breach of contract (First Counterclaim) and breach of implied covenant of good faith & fair dealing (Second Counterclaim). To the extent that Plaintiffs are seeking summary judgment on Defendant's counterclaims for abuse of process (Third Counterclaim), civil conspiracy (Fourth Counterclaim), and breach of fiduciary duty (Fifth Counterclaim), Plaintiffs' Motion for Partial Summary Judgment is denied.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 134) is GRANTED as to all of Plaintiffs' claims;

2. Plaintiffs' Partial Motion for Summary Judgment (ECF NO. 64) is GRANTED as to Defendant's breach of contract claim (First Counterclaim) and breach of

implied covenant of good faith & fair dealing claim (Second Counterclaim);

3.      To the extent Plaintiffs' Partial Motion for Summary Judgment (ECF NO. 64)

        sought summary judgment on Defendant's counterclaims for abuse of process

        (Third Counterclaim), civil conspiracy (Fourth Counterclaim), and breach of

        fiduciary duty (Fifth Counterclaim), Plaintiffs' Motion for Partial Summary

        Judgment is DENIED, and these claims will proceed to trial; and

4.      Defendant's Request for Oral Argument (ECF No. 139) is DENIED as MOOT.


        Dated this 21st day of February, 2012.

                                                    BY THE COURT:

                                                    _____

                                                    William J. Martínez
                                                    United States District Judge